**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br><br>    v.<br><br>DYNAMIC VISIONS, INC. and ISAIAH<br>BONGAM,<br>  Defendants. |

**Civil Action No. 11-695 (CKK)**

**MEMORANDUM OPINION**
(October 24, 2016)

      This is a False Claims Act ("FCA") suit brought by Plaintiff United States of America

against home health care provider Dynamic Visions, Inc. and its sole owner, registered agent,

president and chief corporate officer, Isaiah Bongam (collectively "Defendants"). Plaintiff alleges

that between January 2006 and June 2009 Defendants submitted false or fraudulent claims to

Medicaid for reimbursement for home health care services. Specifically, Plaintiff claims that many

of the patient files associated with the claims made by Defendants did not contain "plans of care"

as required under applicable regulations, or contained plans of care that were not signed by a

physician or other qualified health care worker, did not authorize all of the services that were

actually rendered, or contained forged or untimely signatures. Presently before the Court is

Plaintiff's [103] Motion for Summary Judgment.

      Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a

whole, the Court shall GRANT-IN-PART Plaintiff's [103] Motion for Summary Judgment. With

---

[1] The Court's consideration has focused on the following documents and their attachments
and/or exhibits:  Pl.'s Mot. for Summary Judgment, ECF No. 103 ("Pl.'s Mot."); Defs.' Opp'n to
Pl.'s Mot. for Summary Judgment, ECF No. 110 ("Defs.' Opp'n"); Pl.'s Reply to Defs.' Opp'n to
Pl.'s Mot. for Summary Judgment, ECF No. 111 ("Pl.'s Reply").  In an exercise of its discretion,

one exception, the Court finds that Plaintiff is entitled to summary judgment on its claim that Defendant Dynamic Visions submitted false claims under an implied certification theory of liability.  The Court excepts from this finding, however, Plaintiff's claims based on forged plans of care because Plaintiff's evidence of forgery is hearsay and therefore not competent summary judgment evidence.  The Court will temporarily hold Plaintiff's Motion in abeyance as to these claims and as to Plaintiff's claims against individual Defendant Isaiah Bongam to give Plaintiff an opportunity to supplement the record with competent affidavits.

## I. BACKGROUND

### A.  Factual Background

Before discussing the facts of this case, the Court must address the implications of Defendants' failure to respond to the vast majority of the facts in Plaintiff's Statement of Material Facts Not in Genuine Dispute.  Federal Rule of Civil Procedure 56(e) states that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  In this case, the parties were specifically and repeatedly put on notice that "[t]he party responding to a statement of material facts must respond to each paragraph with a **correspondingly numbered paragraph**, indicating whether that paragraph is admitted or denied" and "[t]he Court may assume that facts identified by the moving party in its statement of material facts are **admitted**, unless such facts are controverted in the statement filed in opposition to the motion."  ECF No. 86 (emphasis in original); *see also* Order Establishing Procedures, ECF No. 2 ("[t]he Court assumes facts identified

_____

the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

Defendants did not heed these warnings. Defendants did include with their Opposition to Plaintiff's Motion for Summary Judgment a "Statement of Material Facts in Dispute." However, Defendants did not indicate the particular facts in Plaintiff's statement to which Defendants' listed "facts" correspond and rebut. As far as the Court can tell, the listed "facts" either are not responsive to any fact in Plaintiff's Statement, are irrelevant to the pending Motion, or are merely legal arguments. Accordingly, although the Court will address the facts in Defendants' Statement where appropriate, the majority of the facts in Plaintiff's Statement will be considered admitted. *See Canning v. U.S. Dep't of Def.*, 499 F. Supp. 2d 14, 16 (D.D.C. 2007) (deeming facts admitted that were not adequately addressed by non-movant's Statement of Material Facts in Dispute that "blend[ed] factual assertions with legal argument") (quoting *Colbert v. Chao*, No. CIV.A. 99-0625, 2001 WL 710114, at *8 (D.D.C. June 19, 2001), *aff'd*, 53 F. App'x 121 (D.C. Cir. 2002)).

### 1. Home Health Care and Medicaid

Defendant Dynamic Visions is a home health care provider. Pl.'s Stmt. of Material Facts Not in Genuine Dispute, ECF No. 103-1 ("Pl.'s Stmt.") at ¶ 13. Home health care refers to the provision of care in a patient's residence and other assistance with the activities of daily life such that the patient may continue to live at home. *Id*. at ¶ 6. Defendant Isaiah Bongam is the sole owner, registered agent, president and chief corporate officer of Dynamic Visions. *Id*. at ¶ 17.

Dynamic Visions provided home health care services to recipients of Medicaid, and regularly submitted claims for reimbursement for those services to the D.C. Department of Health Care Finance ("DHCF"). *Id*. at ¶ 13. Medicaid provides medical services to eligible individuals with incomes too low to meet their own medical needs. *Id.* at ¶¶ 1-2.

The rules and requirements for the reimbursement of home health care services under D.C. Medicaid are contained in the D.C. Municipal Regulations. Pl.'s Ex. 2, ECF No. 103-6 (D.C. Mun. Regs. tit. 29, § 5000, *et seq*.) ("D.C. Medicaid Regulations"). Under these regulations, recipients may qualify for the type of home health care services provided by Dynamic Visions if:

> (a) The Medicaid recipient has received an initial assessment in which the recipient is determined to have functional limitations in one or more activities of daily living for which personal care services are needed; and

> (b) The physician or nurse, after evaluation of the Medicaid recipient, has an expectation that the medical, nursing and social needs can be safely, adequately and appropriately met in the recipient's home or other location.

*Id*. § 5005.1. A central condition to D.C. Medicaid's willingness to pay for such home health care services is that they must have been authorized by a physician or other qualified health care worker in a document referred to as a "plan of care." Specifically, the D.C. Medicaid Regulations require that "[e]ach Provider shall develop a written plan of care within seventy-two (72) hours of the initial evaluation of the patient based upon an assessment of the patient's functional limitations." *Id*. § 5006.2. "The plan of care shall specify the frequency, duration and expected outcome of the services rendered." *Id*. § 5006.3. "The plan of care shall be approved by the patient's physician or advanced practice registered nurse" and must be regularly re-certified. *Id*. §§ 5006.4-6.5.

Providers are also required to "maintain accurate records reflecting past and current findings, the initial and subsequent plans of care, and the ongoing progress of each patient." *Id*. § 5007.1. These patient records must include, among other things, "the initial certification and re-certifications of the plan of care." *Id*. § 5007.8(a). The regulations state that "[e]ach provider

shall agree to accept as payment in full" an amount determined to be reimbursement for "the *authorized* services provided to clients." *Id*. § 5009.4 (emphasis added). In other words, providers are only entitled to reimbursement for services that are authorized by physicians or other qualified health care workers pursuant to their plans of care. Decl. of Claudia Schlosberg, ECF No. 103-3 ("Schlosberg Decl.") at ¶ 10. The D.C. Medicaid Regulations provide a mechanism for auditing providers to ensure that Medicaid payments are "made in accordance with federal and District rules governing Medicaid," and to "recoup . . . those monies erroneously paid to the Provider . . . ." Pl.'s Ex. 2 at §§ 5010.1-10.4.

Dynamic Visions was on notice of the importance of complying with these regulations. Dynamic Visions entered into a written agreement with the D.C. Department of Health that stated that in order to participate in D.C. Medicaid, Dynamic Visions must "comply with applicable Federal and district standards for participation in [Medicaid]." Medicaid Provider Agreement, ECF No. 103-5 ("Provider Agreement") at 13. Dynamic Visions agreed to remain "in full compliance with the standards prescribed by Federal and State standards" and to "maintain all records relevant to this Agreement at [Dynamic Visions'] cost, for a period of six years or until all audits are completed, whichever is longer." *Id*. at 14. Dynamic Visions was also required to "submit invoices for payment according to the Department's requirements." *Id*. at 16. Finally, the Provider Agreement states that "[i]f the Department determines that [Dynamic Visions] has failed to comply with the applicable Federal or District law or rule[s] . . . the Department may . . . [w]ithhold all or part of the providers' payments." *Id*. at 17.

To the extent that there is any ambiguity in this regulatory and contractual framework regarding the importance of properly authorized plans of care and the maintenance of provider records, the Court finds that the undisputed declaration of Claudia Schlosberg cements these

points.  Ms. Schlosberg, the Medicaid Director of the District of Columbia Medicaid Program,

states that "the failure to obtain proper authorization from a physician or advanced practice

registered nurse, or to maintain records, such as timecards or other records of services actually

rendered, would result in denial of reimbursement."  Schlosberg Decl. at ¶ 10.  More specifically,

Ms. Schlosberg states that DHCF would not reimburse providers for services rendered outside

the scope of authorization documented in a plan of care in the following scenarios:  (1) "when

the plan of care is not signed by a physician or advanced practice nurse," (2) "when there is no

plan of care in the beneficiary's file," (3) "when the plan of care is signed before or after the

dates of service," (4) "when the provider is rendering . . . services based on a plan of care with a

forged signature," (5) "when the provider submits duplicate claims," and (6) "when the provider

bills for . . . services that exceed the hours that are authorized in the [p]lan of [c]are or bills for

services that are not authorized in the plan of care."  Id. at ¶¶ 13-18.

### 2.  Investigations of Dynamic Visions

In 2008, the DHCF conducted a "post payment review" of claims submitted by Dynamic

Visions to D.C. Medicaid.  Pl.'s Stmt. at ¶ 22.  During that review, DHCF audited the records of

twenty-five recipients of Dynamic Visions' services between January 2006 and October 2008,

and concluded that they contained insufficient documentation to support Dynamic Visions'

claims for payment.  Id. at ¶¶ 23-24.[2]

---

[2] Defendants argue that there is a contested issue of fact as to whether this investigation
determined that Dynamic Visions had submitted claims for services that were not, in fact,
rendered at all.  Defs.' Opp'n at 10.  Defendants claim that all services for which they billed
Medicaid were rendered.  Defs.' Stmt. at ¶¶ 9-10, 23.  However, although some reference is
made in Plaintiff's Complaint and in the briefing of this Motion to findings that Dynamic Visions
had submitted claims for services not rendered, the Court does not interpret Plaintiff's Motion as
seeking summary judgment on those claims.  Accordingly, the Court assumes Plaintiff is not
pursuing these types of claims in this case, and Plaintiff should notify the Court and Defendants

The DHCF's findings led to a further review of Dynamic Visions' claims by the Federal Bureau of Investigation ("FBI") and the Department of Health and Human Services – Office of the Inspector General ("DHHS-OIG"). *Id.* at ¶ 25.  The FBI and the DHHS-OIG confirmed the DHCF's findings and subsequently obtained and executed a search warrant for Dynamic Visions' office and Isaiah Bongam's home, during which Dynamic Visions' patient files were seized. *Id.* at ¶¶ 26-28.  The FBI's review of these patient files revealed that many either lacked plans of care entirely, or had plans of care that were not signed or otherwise did not authorize the care that Defendants claimed to have provided.[3] *Id.* at ¶ 29.

## B.  Procedural History

Based on the results of these investigations, Plaintiff filed this suit on April 7, 2011. Compl., ECF No. 1.  Plaintiff alleged that Defendants submitted fraudulent claims to D.C. Medicaid for home health care services not rendered or not authorized. *Id.* at ¶ 1.  At its most inclusive, the period of time Plaintiff alleges these claims were submitted is January 2006 to June 2009. *Id.* at ¶¶ 17-18.  Plaintiff asserted causes of action under the FCA for false claims, false certifications and false records, as well as a cause of action for common law fraud. *Id.* at ¶¶ 24-31.

---

if that assumption is not correct.  Instead, Plaintiff's Motion appears to only be seeking judgment on claims based on services rendered without proper authorization.  Therefore, whether or not the services were, in fact, rendered, is not a material fact.

[3] Defendants complain that Plaintiff did not provide with its Motion the full names and identifying information of the patients whose file are at issue.  Defs.' Stmt. at ¶¶ 14, 21.  The omission of this information by Plaintiff appears, however, to be in compliance with Local Civil Rule 5.4(f), which requires that parties reference only the last four digits of certain account numbers in their pleadings.  Moreover, Defendants' claims that they could not identify the patients at issue are debunked by the fact that they provided exhibits with their Opposition which identify the patients by name.

Plaintiff then promptly moved for, and the Court granted, a prejudgment writ of attachment and garnishment with regard to, among other things, thirty bank accounts maintained by Defendants Bongam and Dynamic Visions. *See* App. for Prejudgment Writ of Attachment and Garnishment, ECF No. 6. Plaintiff produced evidence at that time to support its concern that large amounts of money were being funneled out of Dynamic Visions and into personal or unrelated corporate accounts maintained by Defendant Bongam, including accounts in overseas banks located in Cameroon. *Id*. at ¶¶ 2-3.

As the case progressed, it became apparent that Defendants had little intention of providing Plaintiff any meaningful discovery. This included any discovery related to Defendants' finances, as well as practically any discovery related to the substantive factual issues in this case. ECF No. 85 (holding that "Defendants have repeatedly failed to comply with the Court's orders to provide financial and factual discovery requested by Plaintiff" and listing the categories of discovery Defendants failed to provide). After extensive motion practice and hearings, and an Order to Show Cause, the Court issued an Order on April 14, 2015 holding Defendants in contempt for their discovery abuses. ECF No. 94. The Court ordered that Defendants were precluded from introducing or relying upon in their response to Plaintiff's Motion for Summary Judgment *or at trial* any and all documents that Defendants had not specifically identified or produced up to that point as relevant to Defendants' defenses to the allegations in the Complaint. *Id*. at 4. The Court held consideration of additional sanctions in abeyance.

Subsequently, Plaintiff filed the pending Motion for Summary Judgment seeking judgment on its FCA causes of action with regard to Medicaid claims associated with twenty of Dynamic Visions' patients whose files lacked any plans of care, or contained plans of care that

were backdated, forged, lacked signatures, or were out of date.  *See* Pl.'s Mot. at 29.  Defendants

oppose Plaintiff's motion.[4]  *See* Defs.' Opp'n.  The Motion is now fully briefed and ripe for

resolution.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar

summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to

the relevant facts; the dispute must be "genuine," meaning that there must be sufficient

admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to

specific parts of the record—including deposition testimony, documentary evidence, affidavits or

declarations, or other competent evidence—in support of its position, or (b) demonstrate that the

---

[4] The Court refers herein to the amended version of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, filed on August 25, 2015.  ECF No. 110.  Defendants first filed an Opposition to Plaintiff's Motion for Summary Judgment on August 7, 2015.  Defs.' Opp'n to Pl.'s Mot. for Summary Judgment, ECF No. 106.  On August 10, 2015, Defendants requested leave of Court to amend their Opposition, claiming that they had inadvertently filed the wrong version of the document and omitted one exhibit.  Defs.' Mot. for Leave to Amend Opp'n to Pl.'s Mot. for Summary Judgment, ECF No. 107.  Plaintiff opposed, arguing that the new Opposition improperly added legal arguments to its statement of facts in genuine dispute.  Pl.'s Opp'n to Defs.' Mot. for Leave to Amend, ECF No. 108 at 2.  By Minute Order on August 25, 2015, the Court granted Defendants' Motion to Amend, but noted that it was withholding judgment on whether Defendants' additions to their Opposition were appropriate.  The Court addresses that issue further in this Memorandum Opinion.

materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  "[S]elf-serving affidavits alone will not protect the non-moving party from summary judgment."  *Carter v. George Washington Univ.*, 180 F. Supp. 2d 97, 111 (D.D.C. 2001), *aff'd*, 387 F.3d 872 (D.C. Cir. 2004).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor.  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

# III. DISCUSSION

## A. Defendants' Hearsay Objections

As a threshold matter, the Court must resolve the parties' dispute regarding the hearsay nature of Plaintiff's summary judgment evidence.  Defendants devote nearly all of their Opposition to Plaintiff's Motion for Summary Judgment to the argument that the declarations of FBI agents Heidi Hansberry and Nicholas J. Phend, and the declaration of Claudia Schlosberg, are inadmissible hearsay and therefore incompetent summary judgment evidence.  Defs.' Opp'n at 8-10.  Unfortunately, Defendants do not point the Court to particular statements in these declarations that they contend are hearsay, opting instead to characterize the declarations in their entirety as incompetent summary judgment evidence.  The reality, as usual, is more nuanced: the declarations contain both hearsay and non-hearsay statements.  The Court will discuss only those statements in the declarations that are necessary for the resolution of this Motion.

Defendants are correct that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Accordingly, "'sheer hearsay' . . . 'counts for nothing'" on summary judgment.  *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)).  However, summary judgment evidence need not be "in a *form* that would be admissible at trial," so long as it is "capable of being converted into admissible evidence."  *Gleklen*, 199 F.3d at 1369; *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 121, 129 n.10 (D.D.C. 2014) (holding that a declaration could be considered for the purposes of summary judgment because

"[t]he statements in . . . [the] Declaration are capable of being converted into admissible, non-hearsay, evidence when . . . [the declarant] testifies at trial").[5]

Applying these principles, the declaration of Claudia Schlosberg is competent summary judgment evidence because it is based on Ms. Schlosberg's personal knowledge and does not contain hearsay.  Plaintiff relies on the Schlosberg Declaration as evidence regarding the nature of D.C. Medicaid Regulations and the requirements for being reimbursed by DHCF for home health care services.  Pl.'s Stmt. at ¶ 29.  These are matters about which Ms. Schlosberg has personal knowledge because she is the Medicaid Director for the District of Columbia Medicaid Program.  Schlosberg Decl. at ¶ 2.  In her role, Ms. Schlosberg oversees the administration that provides oversight and monitoring of personal care aid, which includes home health care services.  *Id*. at ¶ 3.  Accordingly, as stated in her declaration, Ms. Schlosberg is "familiar with the regulations governing the conditions of payment or reimbursement from Medicaid funds for the provision of [personal care] services," and her statements are all based upon "personal knowledge."  *Id*. at ¶¶ 1, 3.  She is clearly an appropriate declarant with regard to DHCF's practices, rules and agreements.

Similarly, the majority of the declarations of FBI agents Heidi Hansberry and Nicholas J. Phend are competent summary judgment evidence.  Plaintiff primarily relies on the Hansberry Declaration as evidence regarding the content of Dynamic Visions' patient files, invoices

---

[5] Defendants devote nearly half of their Opposition to Plaintiff's Motion for Summary Judgment to a discussion of the admissibility of "overview testimony" given by a government agent at the opening of a criminal trial, and whether such testimony violates the Confrontation Clause.  This entire passage from Defendants' brief appears to be copied and pasted from the D.C. Circuit's opinion in a criminal case, *United States v. Smith*, 640 F.3d 358, 366-67 (D.C. Cir. 2011).  Put mildly, the Court does not find this portion of Defendants' brief particularly persuasive.  These cases do not provide the proper framework for analyzing Defendants' hearsay objections in this civil case at the summary judgment stage.

submitted by Dynamic Visions to DHCF, and various other administrative forms from Dynamic Visions' files.[6]  Pl.'s Stmt ¶ 29.  Plaintiff primarily relies on the Phend Declaration as evidence regarding the content of Defendants' various bank records.  Both represent an acceptable form of proof at the summary judgment stage.  First, agent Hansberry states that her declaration is based on "personal knowledge" and that she "participated in the review" of the documents she describes, Decl. of Heidi Hansberry, ECF No. 103-4 ("Hansberry Decl.") at ¶¶ 4, 10, and agent Phend represents that his declaration is based on "information gathered during the course of the investigation" of Dynamic Visions, of which he has "personal knowledge," Declaration of Nicholas J. Phend, ECF No. 103-2 ("Phend Decl.") at ¶ 4.  Like Ms. Schlosberg's declaration, although "technically hearsay," *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 8 (D.D.C. 2005) (quoting *EchoStar Commc'ns Corp. v. FCC*, 292 F.3d 749, 753 (D.C. Cir. 2002)), these declarations clearly could be "converted into admissible evidence," *Gleklen*, 199 F.3d at 1369, should these agents testify at trial.

Moreover, to the extent that the agents' references to the content of Defendants' patient records, bank records or invoices might constitute hearsay, they too are capable of being

---

[6] In their "Statement of Material Facts in Dispute," Defendants argue that agent Hansberry's declaration is "unreliable" because it discusses claims made outside the period alleged in Plaintiff's Complaint and because the amount of money agent Hansberry states is associated with Defendants' false claims differs from figures put forth by Plaintiff earlier in this litigation.  Defs.' Stmt. at ¶¶ 13, 15.  Beyond the fact that neither of these are statements of *fact*, they are also not persuasive legal arguments.  The Complaint discusses false claims spanning from as early as January 2006 to as late as June 2009, a time frame which encompasses the vast majority of the claims discussed by agent Hansberry.  Hansberry Decl. at ¶¶ 12-76; Compl. at ¶¶ 17-18.  With respect to a small minority of the patients at issue, the Hansberry declaration does mention certain records and claims made outside of that period, but, as discussed further below, the Court will not enter judgment on those claims.  Nor is there anything improper or "unreliable" about the reduction in alleged damages.  Plaintiff has apparently made the decision to pursue only some of the false claims it originally alleged and not others, and the amount of damages pursued has accordingly been reduced.  Pl.'s Response to Defs.' Stmt. at ¶ 13.

converted into admissible evidence.  All of the records, of which these agents claim to have personal knowledge from their investigation of Dynamic Visions, themselves facially appear to be admissible either as non-hearsay statements of a party opponent, Fed. R. Evid. 801(d)(2), or under exceptions to the hearsay rule for business records, Fed. R. Evid. 803(6), or missing business records, Fed. R. Evid. 803(7).  Plaintiff could also lay the proper foundation for these agents to provide summary evidence of these records, which seems particularly appropriate given the thousands of claims at issue and the, *at least*, thirty bank accounts maintained by Defendants.  "For a summary of documents to be admissible, the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient; the documents themselves must be admissible; the documents must be made reasonably available for inspection and copying; the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it."  *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014); Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.").  All of these requirements either are satisfied or could be satisfied at trial with regard to the agents' summaries of these records.

However, the same cannot be said for agent Hansberry's references to statements allegedly made by third-party physicians to FBI agents during the FBI's investigation of Dynamic Visions.  Agent Hansberry states that various physicians told FBI agents that they did not sign certain documents, and that signatures on documents that the FBI provided to the doctors were not their own.  *See, e.g.*, Hansberry Decl. ¶ 40 ("Dr. Schlosberg was interviewed twice by FBI agents by telephone" and stated that certain forms "contained signatures that did not belong to him and which he did not recognize.").  Plaintiff relies on these statements as

evidence that the signatures on those documents were forged.  Pl.'s Stmt. ¶¶ 29(c), (i), (l).

Defendants' objection to the use of this evidence is not "baseless," as Plaintiff claims.  Pl.'s

Reply at 6.  Plaintiff offers no hearsay exception these statements might fall into.  They are

classic hearsay, and accordingly "count for nothing" at the summary judgment stage.  *Gleklen*,

199 F.3d at 1369; *see also United States v. Speqtrum, Inc.*, 47 F. Supp. 3d 81, 89 (D.D.C. 2014)

(noting "an FBI agent's account of his conversation with a witness" as an example of hearsay

that would normally not be considered at the summary judgment stage in FCA suit).

Also hearsay is FBI agent Phend's statement about what other FBI agents told him

Octavie Bongam had said about her and her fathers' respective roles within, and control over,

Dynamic Visions.  Phend Decl. at ¶¶ 26-28.  While the Court may be inclined to find that Ms.

Bongam's statements are non-hearsay admissions of a party opponent, Fed. R. Evid. 801(d)(2),

Plaintiff does not provide the Court with any hearsay exception applicable to the statements of

the non-declarant FBI agents.  Plaintiff should provide declarations from the actual agents who

claim to have heard these statements.  *See Equal Employment Opportunity Comm'n v. Howard*

*Univ.*, 70 F. Supp. 3d 140, 148 (D.D.C. 2014) (refusing to consider at the summary judgment

stage notes that were "classic hearsay" because "they contain[ed] the out-of-court statements of

third parties and [were] offered to prove the truth of the matter they assert," and noting that

"plaintiff should have deposed, or obtained declarations from, employees with knowledge.").

Because it will not consider this hearsay evidence at this time, the Court will hold

Plaintiff's Motion in abeyance with regard to two sets of claims: (1) claims based on invoices

submitted between January 2006 and June 2009 pursuant to forged plans of care and (2) claims

against Defendant Isaiah Bongam individually.  Holding Plaintiff's Motion in abeyance is

appropriate because the parties' papers suggest that Plaintiff may be able to marshal the

testimony of these physicians and other FBI agents, Pl.'s Response to Defs.' Stmt., ECF No. 111-1 at 7; Phend Decl. at ¶¶ 26-28, and that Defendants' sole response to that testimony may be unsubstantiated, self-serving and conclusory refutation that would not warrant denying summary judgment, *see* Decl. of Isaiah Bongam, ECF No. 110-1 at ¶ 7 ("Dynamic Vision did not forge any physician's signatures."); *id.* at ¶ 20 ("There is no hand writing expert report to show that any signatures contained in the plans of care are forged."); *id.* at ¶ 3 ("I did not have sole control over [D]ynamic [V]isions accounts . . . I was not the only signatory on the accounts").  Accordingly, as detailed in the accompanying Order, the Court will allow Plaintiff an opportunity to supplement the record with affidavits from these physicians and agents.

## B.  Plaintiff's FCA Claims

Having resolved Defendants' evidentiary objections, the Court now moves to the merits of Plaintiff's FCA claims.  The FCA creates liability for anyone who (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," ("false claims"), as well as anyone who (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" ("false records or statements").  31 U.S.C. § 3729(a)(1)(A)-(B).  Plaintiff moves for summary judgment on both types of FCA claims.

### 1.  False Records or Statements

Plaintiff's argument in favor of summary judgment on its "false records or statements" claim can be quickly dispatched at this time.  The only "false statements" Plaintiff points the Court to are plans of care with forged physician signatures.  Pl.'s Mot. at 9.  As discussed above, Plaintiff's claims of forgery are dependent on hearsay statements from third-party physicians regarding their signatures.  The Court will not consider these statements for the purposes of this

Motion unless the record is supplemented with affidavits from the physicians.  Accordingly, Plaintiff is not entitled to summary judgment on this claim at this time.

### 2.   False Claims

The Court will, however, grant-in-part Plaintiff's Motion with regard to its claim under Section 3729(a)(1)(A) for presenting "false claims."  The elements of this claim are "[a] defendant submitted a claim to the government, [b] the claim was false, and [c] the defendant knew the claim was false."  *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 45 (D.D.C. 2011) (quoting *United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 6 (D.D.C. 2003)).

### a.   Dynamic Visions Submitted Claims to the Government

No genuine dispute exists as to whether Dynamic Visions submitted claims to the Government.  The evidence clearly demonstrates that Dynamic Visions submitted numerous Medicaid claims for payment to DHCF between January 2006 and June 2009.  Pl.'s Stmt. ¶ 29. Defendants argue that Plaintiff cannot satisfy this element because Dynamic Visions did not submit claims directly to the *United States* government, Defs.' Stmt. ¶ 25, but this argument fails to properly grasp the scope of the FCA.  The FCA defines "claim" to encompass "any request or demand . . . for money or property . . . whether or not the United States has title to the money or property, that . . . is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government . . . provides or has provided any portion of the money or property requested or demanded."  31 U.S.C. § 3729(b)(2).  Defendants do not dispute that "Federal and state governments *jointly* fund Medicaid."  Pl.'s Stmt. ¶ 2 (emphasis added).  Accordingly, "[b]ecause state Medicaid expenditures are, in part, reimbursed by the federal government, 'Medicaid claims submitted to a state are . . . 'claims' to the federal government under the FCA.'"

*Speqtrum*, 47 F. Supp. 3d at 90 (quoting *United States v. Rogan*, 459 F. Supp. 2d 692, 717 (N.D. Ill. 2006), *aff'd,* 517 F.3d 449 (7th Cir. 2008)).

### b.   The Claims Were False

The next element Plaintiff must prove under a "false claims" theory of liability is falsity.  There are two overarching ways Plaintiff may demonstrate falsity.  The first is factual falsity:  "[i]n the paradigmatic case, a claim is false because it 'involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'"  *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010) ("*SAIC*") (quoting *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)).

Plaintiff briefly argues that it has demonstrated that Dynamic Visions' claims were factually false, but the Court disagrees.  First, to the extent that Plaintiff's argument is based on forged signatures on plans of care, Plaintiff's only evidence of forgery is hearsay and thus will not be credited for the purposes of summary judgment at this time, without supplementation of the record with the sworn affidavits of the physicians.  Second, Plaintiff argues that Dynamic Visions' claims for reimbursement were factually false because the services for which Dynamic Visions sought reimbursement were not duly authorized as required under D.C. Medicaid Regulations.  The Court disagrees with Plaintiff that this renders the claims factually false.  Far from falling within the "paradigmatic" case of falsity, as Plaintiff claims, the fact that the services for which Dynamic Visions sought reimbursement were not rendered pursuant to proper authorization in a signed plan of care does not render the claims *factually* "false."  *See United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 155 (D.D.C. 2011) (rejecting the government's "somewhat surprising[ ]" argument that defendant's claims were factually false

simply because they sought reimbursement for "costs that [defendant] knew were not allowed"). Instead, as discussed below, these claims are actionable under a different theory of falsity.

The second way a claim may be false is if it falsely certifies compliance with an applicable statute, regulation or contract.  False certifications can be either express or implied.  *See SAIC*, 626 F.3d at 1266.  Here, Plaintiff argues that Dynamic Visions impliedly certified compliance with D.C. Medicaid Regulations when it submitted claims for reimbursement to DHCF.  "[T]o establish the existence of a 'false or fraudulent' claim on the basis of implied certification," Plaintiff must show not only that Dynamic Visions withheld information in a misleading way regarding its noncompliance with the regulations, but also that that noncompliance would have been material to the DHCF's decision to pay Dynamic Visions' claims.  *SAIC*, 626 F.3d at 1269; *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001-02 (2016).  Plaintiff has made that showing here.

First, the undisputed evidence shows that Dynamic Visions withheld information about its regulatory violations.  As explained above, D.C. Medicaid Regulations require providers to prepare and maintain written plans of care for each patient, which have been approved by the patient's physician or other qualified health care worker.  Plaintiff has demonstrated, and Defendants have not meaningfully rebutted, that Dynamic Visions did not comply with these regulations.[7]  Pl.'s Stmt. ¶ 29.  Numerous invoices were submitted to DHCF between January 2006 and June 2009

---

[7] Defendants do provide the Declaration of Mr. Bongam which states, without explanation or supporting documentation, that Dynamic Visions "maintained a policy and procedure manual that was compliant with DCHF regulations" and "followed the policy and procedures stated in the manual."  Defs.' Stmt. at ¶ 1.  But this does not create a genuine issue of material fact.  The fact that Dynamic Visions "established" a manual that it believed complied with D.C. Medicaid Regulations does not rebut Plaintiff's documentary evidence that plainly shows that Dynamic Visions, whether it adhered to that manual or not, in fact violated those regulations.

for services that were beyond the scope of existing, signed and authorized plans of care maintained by Dynamic Visions.[8]   The Court notes that the Hansberry Declaration makes reference to even more claims for unauthorized services that were submitted outside of this time period, but the Court will enter judgment only on those claims submitted inside the January 2006 to June 2009 period alleged in the Complaint.

Moreover, this is not a case where Dynamic Visions was merely silent about its compliance, or lack thereof, with these regulations.  Here, Dynamic Visions' silence was misleading because it had previously affirmatively represented to the D.C. Department of Health, in a written contract, that it would "be in full compliance" with these regulations, "submit invoices for payment according to the Department's requirements," and maintain all required records.   Provider Agreement at 14, 16.

Second, Plaintiff has also made a sufficient and unrebutted showing that Dynamic Visions' noncompliance, had it been known to DHCF, would have been material to DHCF's decision to pay Dynamic Visions' claims.   "[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."   *Universal Health Servs.*, 136 S. Ct. at 2002. "[W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive."   *Id.* at 2003.   The Government's practice of paying or not paying claims when it knows that the particular provision has been violated is also probative.   *Id.*

---

[8] This includes each of the flaws Plaintiff has argued exist in Dynamic Visions' patient files (unsigned or non-existent plans of care, plans of care signed too far before or after service dates, duplicate claims, and services not authorized by existing plans of care), with the exception of plans of care with forged signatures.

Plaintiff offers at least three forms of evidence that compliance with the plan of care requirements was material to DHCF's decision to pay Dynamic Visions' claims. First, the D.C. Medicaid Regulations themselves state that reimbursement will only be made for "authorized services." Pl.'s Ex. 2 at § 5009.4. The requirement that services be "authorized" in turn refers to the existence of a plan of care signed by a physician or other qualified health care worker. Schlosberg Decl. at ¶ 10. As Plaintiff explains, and the Court finds eminently reasonable, authorization in the form of a signed plan of care is a requirement for reimbursement because it is the only way D.C. Medicaid can know that the services for which it is paying have been determined to be medically necessary. Pl.'s Mot. at 2. Second, Dynamic Visions' contract with the D.C. Medicaid Program states that payment can be withheld "[i]f the Department determines that a provider has failed to comply with the applicable Federal or District law or rule." Provider Agreement at 17. Finally, Plaintiff provides the declaration of the Medicaid Director of the District of Columbia Medicaid Program that states that DHCF does not, in fact, reimburse providers for services provided where there is no plan of care, where the plan of care has not been signed by a physician or advanced practice nurse, where the plan of care has been signed but only after services had been rendered, or where a signed plan of care exists but the services billed exceed the scope of that plan. Schlosberg Decl. at ¶¶ 13-18.

Defendants do not dispute any of this evidence of materiality, nor do they argue in even a conclusory manner that the regulatory violations at issue would not have been material to DHCF's decision to pay. The Court accordingly finds that no dispute of material fact exists with regard to the falsity of Defendants' claims based on an implied certification theory.

c.   <u>Dynamic Visions Knew the Claims Were False</u>

Finally, Plaintiff also must prove that Defendants knew their claims were false.  The FCA only prohibits "knowingly" submitting false claims, a term it defines as either having "actual knowledge of the information," acting "in deliberate ignorance of the truth or falsity of the information," or acting "in reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(a)(1)(A), (b)(1).  "Establishing knowledge . . . on the basis of implied certification requires the plaintiff to prove that the defendant knows (1) that it violated a contractual [or regulatory] obligation, and (2) that its compliance with that obligation was material to the government's decision to pay."  *SAIC*, 626 F.3d at 1271.  Plaintiff has made this showing with respect to Defendant Dynamic Visions.

First, the evidence demonstrates that Dynamic Visions acted with at least a "reckless disregard" for the truth regarding its submission of claims in violation of D.C. Medicaid Regulations.  False claims were rampant, including thousands of invoices for services worth nearly half of one million dollars over an approximately three year period from 2006 to 2009.  Pl.'s Stmt. at ¶ 29.  When the DHCF-OPI, FBI and HHS-OIG conducted a post payment review of the records of twenty-five recipients of Dynamic Visions' services, *all twenty-five* were found to have contained insufficient documentation to support Dynamic Visions' claims.  Hansberry Decl. at ¶¶ 7-9.  And these violations would not have been difficult to identify.  Even a cursory review of the company's files would have revealed most of these problems, such as files with absolutely no authorizations from doctors for the care being rendered, *see, e.g.*, Pl.'s Stmt. ¶ 29(e), or plans of care with blank signature blocks, Ex. 3b, ECF 103-7 at 2.  Nor is this a case where knowledge of these violations might have been diffuse: from the record, it appears that Dynamic Visions is a very small operation.  The only employee identified other than Defendant Bongam is his daughter,

Octavie Bongam.  Provider Agreement at 20.  The record shows that, even if they lacked actual knowledge, Dynamic Visions' employees ignored signs of trouble.  Dynamic Visions appears to have had in place quality control mechanisms that included calling the recipients of their services. *See* Hansberry Decl. at ¶¶ 24 n.8, 26 n.11, 50 n.16, 54 n. 24, 72 n. 29.  And yet, when Dynamic Visions was unable to make any contact with a recipient, even after upwards of *fifteen* attempts to do so, it simply continued to submit claims to D.C. Medicaid.  *Id.*  Disregarding these red flags further shows that Dynamic Visions acted with reckless disregard for the truth.

Second, the evidence is also sufficient to show that Dynamic Visions knew, or was at least reckless in not knowing, that these violations were material to DHCF's willingness to pay its Medicaid claims.  In late 2003, Octavie Bongam, then the Administrator of Dynamic Visions, affirmatively acknowledged in a written agreement that Dynamic Visions was required to comply with D.C. Medicaid Regulations and submit its invoices according to those regulations, and that failure to do so could lead to the withholding of payment.  Provider Agreement at 14, 16-17.  As already explained, those D.C. Medicaid Regulations, in turn, plainly require plans of care be in place authorizing service, a point reaffirmed by the undisputed statements of the D.C. Medicaid Director that DHCF does not reimburse providers for services without such authorization.  Pl.'s Ex. 2 at § 5000 *et seq.*; Schlosberg Decl. at ¶¶ 13-18.

Moreover, Dynamic Visions demonstrated its knowledge of the materiality of these requirements through its own conduct.  Dynamic Visions prepared a "policy and procedure manual" for its employees to make sure that they billed for services in compliance with D.C. Medicaid Regulations, Defs.' Stmt. 1, and developed quality control procedures to ensure compliance, Hansberry Decl. at ¶¶ 24 n.8, 26 n.11, 50 n.16, 54 n. 24, 72 n. 29.  Tellingly, in at least

one instance, when a plan of care was found to be missing a signature, an "urgent" memo was sent to the physician requesting authorization. Ex. 8e, ECF No. 103-12.

In response to this showing, Defendants offer *no* evidence that would create a genuine dispute as to the knowing nature of this conduct. Accordingly, the Court finds that Plaintiff is entitled to summary judgment on its false implied certification claim against Defendant Dynamic Visions.[9]

## C.  Defendant Isaiah Bongam and Piercing the Corporate Veil

Plaintiff seeks to hold Defendant Isaiah Bongam individually liable for submitting these false claims as well, either on the theory that he himself violated the FCA, or that Dynamic Visions was merely Bongam's "alter-ego" and therefore the Court should pierce its corporate veil. The Court will hold Plaintiff's Motion in abeyance with regard to these matters pending Plaintiff's submission of the supplemental affidavits discussed above.

## IV.  CONCLUSION

For the reasons discussed above, the Court shall GRANT-IN-PART Plaintiff's [103] Motion for Summary Judgment. Specifically, the Court GRANTS Plaintiff's Motion with respect to Plaintiff's "false claims" claim under an implied certification theory against Defendant Dynamic

---

[9] Specifically, the Court grants summary judgment against Dynamic Visions with regard to the false claims submitted between January 2006 and June 2009 associated with Medicaid recipients: 9667, 6415, 9805, 2853, 5899, 3146, 5592, 4070, 6512, 2297, 3442, 1464, 5215, 3097, 4956, 5315, 9608. *See* Pl.'s Stmt. at ¶ 29. The Court also grants summary judgment as to the false claims from this period associated with Medicaid recipient 1714 to the extent they relate to the complete absence of any plan of care. *Id.* at ¶ 29(c). However, absent supplemental affidavits from the physicians whose signatures were allegedly forged, the Court does not at this time grant summary judgment with regard to claims associated with recipients 9770 or 4435, or with regard to the subset of claims associated with recipient 1714 that are related to forged plans of care. *Id.* at ¶¶ 29(c), (i), (l).

Visions.[10]   As to claims based on forged physician signatures and claims against Defendant Bongam individually, the Court will hold Plaintiff's Motion in abeyance to allow Plaintiff an opportunity to file supplemental affidavits.

An appropriate Order accompanies this Memorandum Opinion.

                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge

---

[10] The Court grants summary judgment only as to liability, and will also hold in abeyance a determination of the particular amount of damages.  Plaintiff's explanation of its damages are insufficient for the Court to be able to discern which damages relate solely to forged plans of care and the judgment should not include any damages from claims outside of the January 2006 to June 2009 period.  Moreover, Plaintiff does not address in its Motion for Summary Judgment its request for treble and other damages.  *See* Compl. at 8.