# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
  Plaintiff,

     v.

DYNAMIC VISIONS, INC. and ISAIAH
BONGAM,
  Defendants.

**Civil Action No. 11-695 (CKK)**

## MEMORANDUM OPINION
(December 6, 2016)

This is a False Claims Act ("FCA") suit brought by Plaintiff United States of America against home health care provider Dynamic Visions, Inc. and its sole owner and president, Isaiah Bongam (collectively "Defendants"). Plaintiff alleges that between January 2006 and June 2009 Defendants submitted false or fraudulent claims to Medicaid for reimbursement for home health care services. Specifically, Plaintiff claims that many of the patient files associated with the claims made by Defendants did not contain "plans of care" as required under applicable regulations, or contained plans of care that were not signed by physicians or other qualified health care workers, did not authorize all of the services that were actually rendered, or contained forged or untimely signatures. Presently before the Court is Plaintiff's [103] Motion for Summary Judgment.

On October 24, 2016, the Court granted-in-part Plaintiff's Motion, and held the remainder in abeyance to allow Plaintiff to supplement the record with competent affidavits on certain discrete issues. Plaintiff has now supplemented the record. Upon consideration of the pleadings,[1]

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits: Pl.'s Mot. for Summary Judgment, ECF No. 103 ("Pl.'s Mot."); Defs.' Opp'n to Pl.'s Mot. for Summary Judgment, ECF No. 110 ("Defs.' Opp'n"); Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Summary Judgment, ECF No. 111 ("Pl.'s Reply"); Pl.'s Supp. Memo., ECF No.

the relevant legal authorities, and the record as a whole, incorporating the October 24, 2016 Opinion as part of that record, the Court now further GRANTS Plaintiff's [103] Motion for Summary Judgment.

## I. BACKGROUND

The Court already set forth the factual background and procedural history of this case in its October 24, 2016 Memorandum Opinion, which is incorporated and made a part of this Memorandum Opinion. *See generally United States v. Dynamic Visions, Inc.*, No. CV 11-695 (CKK), 2016 WL 6208349 (D.D.C. Oct. 24, 2016). In that Opinion, the Court held that Defendant Dynamic Visions was liable under the FCA for submitting false Medicaid claims to the D.C. Department of Health Care Finance ("DHCF"). The Court found that Defendants' claims impliedly certified compliance with D.C. Medicaid regulations that required home health care services be rendered pursuant to signed "plans of care." The Court additionally found that the services for which Defendants had billed DHCF were not, in fact, rendered pursuant to such signed plans of care. The Court temporarily withheld judgment on a subset of claims—those associated with Medicaid recipients 1714, 9770 and 4435—in which Plaintiff alleged that plans of care existed in Defendants' records, but that the physician signature on the plan of care had been forged. The Court also withheld judgment on the individual liability of Defendant Isaiah Bongam. The Court gave Plaintiff an opportunity to supplement the record with competent summary judgment evidence on these issues, and Defendants filed a response to that supplement.

---

115; Defs.' Opp'n to Pl.'s Supp. Memo., ECF No. 116; Pl.'s Reply to Defs.' Opp'n to Pl.'s Supp. Memo., ECF No. 117; Defs.' Mot. for Leave to File a Sur-Reply, ECF No. 118. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor.  *Liberty*

*Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III.  DISCUSSION

The Court will first explain the supplemental evidence that Plaintiff has submitted after the Court's October 24, 2016 Opinion, and then discuss the implications of that new evidence for the Court's final resolution of Plaintiff's motion for summary judgment.

**A.  Plaintiff's Supplemental Evidence**

As explained in the Court's October 24, 2016 Opinion, nearly Defendants' entire Opposition to Plaintiff's motion for summary judgment is devoted to the argument that the declarations of Claudia Schlosberg and FBI agents Heidi Hansberry and Nicholas J. Phend are inadmissible hearsay and therefore incompetent summary judgment evidence.  Defs.' Opp'n at 8-10.  The Court considered that argument in its prior Opinion and agreed that certain discrete statements in the declarations of agent Hansberry and Phend were not competent summary judgment evidence.  First, the Court held that agent Hansberry's references to statements allegedly made by third-party physicians to FBI agents during the FBI's investigation of

4

Dynamic Visions were hearsay.  Agent Hansberry stated that those physicians had told FBI agents that signatures purporting to be theirs on Dynamic Visions' records were forged.  The Court gave Plaintiff an opportunity to present the declarations of the physicians themselves.

Plaintiff has now done so, providing the declarations of Georges Awah, MD, Raj Mathur, MD and Marc Schlosberg, MD.  ECF Nos. 115-1 ("Awah Decl."), 115-2 ("Mathur Decl."), 115-3 ("Schlosberg Decl.").  Doctor Awah states that he was contacted by FBI Agent Phend on April 8, 2015, about the authenticity of signatures purporting to be his on plans of care associated with Medicaid recipient 1714.  Awah Decl. ¶ 2.  He states that Agent Phend faxed three such records to him, that he reviewed those records, and that the signatures on two of the three records were not his.  *Id*. ¶¶ 3-5.  Doctor Mathur similarly states that he was contacted by Agent Hansberry on April 19, 2015, about the authenticity of signatures purporting to be his on plans of care associated with Medicaid recipient 4435.  Mathur Decl. ¶ 2.  He states that Agent Hansberry faxed seven such records to him, that he reviewed those records, and that the signatures on four of the seven records were not his.  *Id*. ¶¶ 3-5.  Finally, Doctor Schlosberg states that he was contacted by Agent Phend on April 7, 2015, about the authenticity of signatures purporting to be his on plans of care associated with Medicaid recipient 9770.  Schlosberg Decl. ¶ 2.  He states that Agent Phend faxed him several such records, that he reviewed those records, and that the signatures on two of them were not his.  *Id*. ¶¶ 3-4.

Second, the Court held that FBI agent Phend's statement about what other FBI agents told him that Octavie Bongam had said about her and her fathers' respective roles within Dynamic Visions was hearsay.  The Court gave Plaintiff an opportunity to present the declaration of the FBI agent who actually interviewed Ms. Bongam.

Plaintiff has now provided the declaration of FBI Agent Gregg C. Domroe.  Declaration of Gregg C. Domroe Regarding the Interview of Octavie Bi Bongam-Bynum, ECF No. 115-4 ("Domroe Decl.").  Agent Domroe states that he interviewed Octavie Bongam, the daughter of Defendant Isaiah Bongam and a former employee of Defendant Dynamic Visions, on March 29, 2010.  *Id*. at ¶¶ 2-4.  Agent Domroe states that Bongam told him that she had worked at Dynamic Visions from 2003 to 2008.  *Id*. at ¶ 4.  She allegedly stated that she was the "Administrator in charge of the management," with responsibility for "the company's payroll, Medicaid/Medicare billing, hiring, recruiting, and the HHC3000 software (the software that ran and recorded Dynamic Visions' billing, payroll, taxes, timesheets, and hours worked)."  *Id*.  Octavie Bongam also allegedly stated that "Isaiah Bongam had sole control of all Dynamic Vision's bank accounts, and would make all deposits and withdrawals" and that "Isaiah Bongam was the only authorized signatory for Dynamic Visions' business checking account."  *Id*. at ¶ 5.  She also apparently recounted a time where she had informed Isaiah Bongam about a new DC Medicaid requirement and Mr. Bongam refused to comply with it.  *Id*. at ¶ 6.  Finally, the Domroe Declaration states that Ms. Bongam explained that a "Dr. Fotso" had been hired by Dynamic Visions as the Director of Quality Insurance, but that Ms. Bongam believed Dr. Fotso was incompetent.  *Id*. at ¶ 9.

**B.  Implications of Plaintiff's Supplemental Evidence for Motion for Summary Judgment**

With the record now supplemented, the Court will rule on the two issues it previously held in abeyance: (1) claims related to forged plans of care and (2) Defendant Isaiah Bongam's individual liability.

### 1.   Claims Related to Forged Plans of Care

The Court finds that Plaintiff has now presented competent summary judgment evidence to support its claims with respect to forged plans of care.  *See* Awah Decl.; Mathur Decl.;

Schlosberg Decl.  As noted in the Court's October 24, 2016 Opinion, Defendants have presented

no evidence to dispute that these plans of care were forged other than unsubstantiated, self-

serving, and conclusory denials.  *See* Decl. of Isaiah Bongam, ECF No. 110-1, ("Bongam Decl.")

at ¶ 7 ("Dynamic Vision did not forge any physician's signatures."); *id*. at ¶ 20 ("There is no

hand writing expert report to show that any signatures contained in the plans of care are

forged.").  Especially in light of the sworn declarations from the physicians involved who state

that the signatures on these plans are not their own, nor those of anyone authorized to sign on

their behalf, such conclusory statements do not warrant denying summary judgment.  *See also*

*Carter v. George Washington Univ.*, 180 F. Supp. 2d 97, 111 (D.D.C. 2001), *aff'd*, 387 F.3d 872

(D.C. Cir. 2004) ("[S]elf-serving affidavits alone will not protect the non-moving party from

summary judgment.").  The Court finds that no genuine issue of material fact exists as to whether

these plans of care were forged.

This finding has two implications for the Court's prior Order.  First, the Court will now

grant summary judgment as to Defendant Dynamic Visions' liability with respect to claims

associated with Medicaid recipients 9770, 4435 and 1714 to the extent they fall within the

January 2006 to June 2009 time period.  The Court previously held these claims in abeyance

because Plaintiff's theory of liability with regard to them was based on alleged forgery, which

was in turn based on hearsay evidence.  Having resolved the hearsay issue, the Court now

determines that Dynamic Visions is liable under the FCA with respect to these claims because, as

addressed in the Court's initial ruling with respect to all other claims, Dynamic Visions falsely

implied to DHCF that it had complied with DC Medicaid regulations requiring signed plans of

care.  Defendant had not, in fact, complied with those regulations because the plans of care on

record were forged.[2]

Second, these forged signatures bolster the Court's finding in its October 24, 2016

Opinion that Dynamic Visions acted knowingly in submitting false claims to DHCF.  The act of

forging signatures on plans of care demonstrates an awareness of wrongdoing and an awareness

that the existence of physician-signed plans of care was a requirement under DC Medicaid

regulations and material to DHCF's willingness to pay Dynamic Visions' claims.  *See United*

*States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010) ("Establishing

knowledge . . . on the basis of implied certification requires the plaintiff to prove that the

defendant knows (1) that it violated a contractual [or regulatory] obligation, and (2) that its

compliance with that obligation was material to the government's decision to pay.").

Defendants argue that, despite these declarations, summary judgment on claims relating

to forged plans of care is still inappropriate.  Specifically, Defendants ask the Court to disregard

these declarations because the Medicaid recipient numbers associated with the claims discussed

therein do not match any Medicaid recipient number listed in a chart of claims that was attached

to Plaintiff's Complaint.  Defs.' Opp'n to Pl.'s Supp. Mem. at 2-3.  Defendants argue that this

proves that these claims are outside the scope of Plaintiff's Complaint.  *Id.*  The Court agrees

with Defendants that the judgment entered should not exceed the scope of the claims at issue in

the Complaint.  However, in response to a Court order, Plaintiff has now explained that all of the

---

[2] Alternatively, Defendant is liable under the FCA's "false records" prong, which creates liability
for anyone who "knowingly makes, uses, or causes to be made or used, a false record or
statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B), for preparing
forged plans of care to support fraudulent claims submitted to Medicaid, *see U.S. ex rel. Harris v.
Bernad*, 275 F. Supp. 2d 1, 6 (D.D.C. 2003) (holding that allegation that defendants "knowingly
created false records, used the false records as the basis for their Medicare claims, and then
submitted the claims to the government" stated a cognizable false records claim).

Medicaid recipients associated with the claims for which Plaintiff seeks summary judgment were within the initial review discussed in the complaint.  Pl.'s Reply to Defs.' Opp'n to Pl.'s Supp. Mem. at 2.  A typographical error regarding the Medicaid recipient numbers listed on the chart submitted with the complaint in this case was discovered during the preparation of Plaintiff's motion for summary judgment, and fixed before the filing of that motion, causing certain recipients' Medicaid numbers to be different in the two filings.  Decl. of Special Agent Heidi Turner, ECF No. 117-1 ("Turner Decl.") at ¶ 9.  This typographical error has no effect on the appropriateness of summary judgment.

The Court will treat Plaintiff's complaint as amended to conform to these revised recipient numbers.  *See Moeslein v. F.A.A.*, 331 F. App'x 752, 754 (D.C. Cir. 2009) (no abuse of discretion in allowing amendment of complaint to fix "typographical errors").  Defendants will suffer no surprise or unfair prejudice from this amendment, and their arguments otherwise are completely baseless.  Defs.' Mot. for Leave to File a Sur-Reply, ECF No. 118, at 3.  Regardless of the Medicaid recipient numbers, Defendants have long known the names associated with the claims at issue in this case, and have had access to the same records as Plaintiff.  Defendants did not raise these typographical errors during the course of this case and only opportunistically seek to do so now as a last ditch effort to avoid summary judgment where it is clearly warranted.[3]

---

[3] Defendants also argue that Plaintiff has misled the Court in its reply brief by stating that the declaration of Special Agent Christopher Steinbauer was filed with an application for writ of attachment and garnishment, as opposed to having been filed with Plaintiff's complaint.  Defs.' Mot. for Leave to File a Sur-Reply at 2-3.  To the extent such a misstatement would have any effect on the pending summary judgment motion, the Court notes that there was nothing misleading about Plaintiff's statement.  Plaintiff stated that "the Declaration of HHS OIG Special Agent Christopher Steinbauer cited by Defendants in their Opposition was not filed in support of the Complaint as Defendants represented, but was filed in support of a concurrently-filed Application for Writ of Attachment and Garnishment."  Pl.'s Reply to Defs.' Opp'n to Pl.'s Supp. Mem. at 2 n.1.  Although Agent Steinbauer's declaration is attached as an exhibit to

### 2.   Individual Liability of Defendant Isaiah Bongam

The second issue held in abeyance by the Court in its October 24, 2016 Opinion was the question of Defendant Isaiah Bongam's individual liability.  The Court held this issue in abeyance to allow Plaintiff to demonstrate that it could produce competent summary judgment evidence of certain alleged statements of Defendant's daughter, Octavie Bongam.

Although the Court previously held that it "may be inclined to find that Ms. Bongam's statements are non-hearsay admissions of a party opponent," the recently-submitted Domroe declaration makes clear that such a finding is not in fact warranted.  The FBI's interview of Ms. Bongam occurred on March 29, 2010.  Domroe Decl. ¶ 2.  However, Agent Domroe states that Ms. Bongam ceased being an employee at Dynamic Visions in 2008.  *Id*. at ¶ 4.  For the statement of an employee to constitute a non-hearsay "opposing party statement," the statement must have been made while the employment relationship existed.  *See* Fed. R. Evid. 801(d)(2)(D) (opposing party statements are non-hearsay if they were "made by the party's agent or employee on a matter within the scope of that relationship *and while it existed*") (emphasis added); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 205–06 (D.D.C. 2014) ("to establish admissibility under this exception, Plaintiffs must demonstrate . . . that Aweis was employed by the PA at the time of the interview").  Accordingly, the Court still does not consider the alleged statements of Octavie Bongam competent summary judgment evidence.

---

Plaintiff's complaint on the electronic docket, *see* ECF No. 1, within that declaration Agent Steinbauer clearly states that "[t]his declaration is submitted in support of an application for writ of attachment and garnishment" against Defendants.  Declaration of Christopher B. Steinbauer in the Identification of District of Columbia Medicaid Recipients, ECF No. 1-2, at ¶ 2.

Putting Ms. Bongam's testimony to the side, the Court views the question of Defendant Bongam's individual liability as two-fold: (a) whether Plaintiff has presented sufficient evidence that Defendant Bongam individually violated the FCA, and (b) if not, whether the Court should pierce the corporate veil and hold him liable for the FCA violations committed by Defendant Dynamic Visions.

### a.   Defendant Bongam's Individual Liability Under the FCA

The Court finds that there is not sufficient evidence in the record before it to grant summary judgment on the issue of whether Defendant Isaiah Bongam himself knowingly submitted the false claims at issue.  "The FCA's scienter requirement should be strictly enforced."  *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 51 (D.D.C. 2014).  Here, to be sure, the record supports the conclusion that certain employees at Dynamic Visions submitted false claims with the requisite scienter, as is made particularly clear by the fact that, as discussed above, employees forged physician's signatures on plans of care.  This demonstrates that the employee knew both that a physician-signed plan of care was necessary, and that claims were being submitted without an adequate plan of care on file.

There is not sufficient evidence in the record, however, to show that Defendant Bongam *himself* had this knowledge or acted with reckless disregard of it.  Plaintiff argues that the submission of false claims "occur[ed] under the supervision of" Defendant Bongam and that he "was aware of the fraudulent and deliberate conduct but did nothing to stop the conduct, investigate how far it went into the personnel structure, or pay Medicaid back for the monies improperly obtained."  Pl.'s Mot. at 2, 13.  But the Court sees little if any actual *evidence* of this supervision or awareness in the record, which the Court notes is likely in large measure due to the fact that Defendants refused to provide Plaintiff with discovery even after being ordered by the Court to do

so.  As support for this proposition, Plaintiff points to evidence that, as discussed further below, Defendant Bongam funneled funds out of Dynamic Visions.  Although relevant to the question of whether the Court should pierce Dynamic Visions' corporate veil, this evidence does not inherently show that Defendant Bongam knew or acted with a reckless disregard of the fact that the patient files associated with claims being submitted to DHCF did not have sufficient plans of care, or that this was material to DHCF's decision to pay those claims.  There is simply not sufficient evidence to warrant summary judgment against Defendant Bongam on this element of Plaintiff's claim.

### b.  Piercing Defendant Dynamic Visions' Corporate Veil

Implicitly recognizing this flaw in their claim against Defendant Bongam, Plaintiff alternatively argues that the Court should pierce the corporate veil and hold Bongam liable for the violations of Defendant Dynamic Visions.  On this point, the Court agrees.  "The D.C. Circuit has found it appropriate to pierce the veil when 'the corporation, rather than being a distinct, responsible entity, is in fact the alter ego or business conduit of the person in control.'"  *Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 147 (D.D.C. 2014) (quoting *Labadie Coal Co. v. Black*, 672 F.2d 92, 97 (D.C. Cir. 1982)).  In determining whether to pierce the corporate veil, the Court asks two questions: "(1) is there such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?"  *Labadie*, 672 F.2d at 96.  The Court answers both questions in the affirmative.

### i.  Unity of Interest Between Dynamic Visions and Isaiah Bongam

To determine whether there is a sufficient unity of interest to warrant piercing the corporate veil, courts consider the following factors: "(1) the nature of the corporate ownership and control; (2) whether the corporation has maintained minutes or adequate corporate records; (3) whether the

corporation has maintained corporate formalities necessary for issuance or subscription to stock, such as an independent board of directors' formal approval of the stock issue; (4) whether there is a commingling of funds and other assets of the corporation; (5) whether there is a diversion of the corporation's funds or assets to non-corporate uses such as the personal uses of the corporation's shareholders; and (6) whether the corporation and its individual shareholders use the same office or business location." *Flynn v. Thibodeaux Masonry, Inc.*, 311 F. Supp. 2d 30, 41 (D.D.C. 2004) (citing *Labadie*, 672 F.2d at 97-99). "It is clearly not necessary that all of these factors be present in a given case to justify piercing the veil." *Labadie*, 672 F.2d at 97. The test to determine whether a corporation is merely the alter ego of its owner "is a practical one, based largely on a reading of the particular factual circumstances." *Valley Fin., Inc. v. United States*, 629 F.2d 162, 172 (D.C. Cir. 1980). "As a fact issue, its ultimate determination is dependent upon the sound discretion of the trial judge in [her] appraisal of the evidence." *Id.*

Here, Defendant Bongam is the sole owner, registered agent, president and chief corporate officer of Dynamic Visions. Pl.'s Stmt. at ¶ 17. Plaintiff has presented no evidence, either during discovery or in response to Plaintiff's motion for summary judgment, that identifies anyone other than himself with any control over the company. Nor does Plaintiff offer any evidence that any corporate formalities were followed within Dynamic Visions. There is also significant evidence of commingling of funds and the diversion of corporate funds for non-corporate uses. Defendant Bongam was the sole signatory on all of Dynamic Visions' bank accounts that are before the Court. Exs. 23A-I, ECF No. 111-2; Ex. 24, ECF No. 111-3. Finally, and most importantly to the Court's analysis, Bongam was able to, and did, withdraw large sums of money out of Dynamic Visions' bank accounts and move them to his own personal accounts, or to the accounts of his two other businesses (whose business addresses were Defendant Bongam's home address) that had no

substantive connection to Dynamic Visions.[4]   Declaration of Nicholas J. Phend, ECF No. 103-2

("Phend Decl.") at ¶¶ 33-36; *see also United States v. Emor*, 850 F. Supp. 2d 176, 208 (D.D.C.

2012) (finding that corporation was alter ego of individual where individual "possessed unchecked

authority to make use of [the corporation's] funds as he saw fit and he exercised ultimate power

over all its corporate decisionmaking," including that he "extensively commingled [the

corporation's] funds with his own and diverted [its] assets for his personal use.").   Finally, the

business address provided for Dynamic Visions at registration was the same as Defendant

Bongam's personal home address.   Phend Decl. at ¶¶ 25, 27.   The Court finds that the current

undisputed record demonstrates a sufficient degree of unity between Defendant Bongam and

Dynamic Visions to warrant piercing the corporate veil.

> ii.   <u>An Inequitable Result Would Follow If The Court Did Not Pierce
> Dynamic Visions' Corporate Veil</u>

Moreover, if the Court were not to pierce the corporate veil, a highly inequitable result

would follow.   The Court has already found that Dynamic Visions submitted numerous false claims

---

[4] Defendant Bongam does make certain self-serving, unfounded and conclusory statements in his
affidavit on these topics, but none raise a genuine dispute sufficient to defeat summary judgment.
Bongam states that "Dynamic Visions, Inc., transferred directly or indirectly funds from
Dynamic Visions Accounts to other accounts to cover payroll and other office expenses."
Bongam Decl. at ¶ 3.   This is undisputed, but irrelevant.   Bongam also asserts that he "did not
have sole control over [D]ynamic [V]isions' accounts and was not solely responsible for all
deposits and withdrawal[s]," and that he was not the sole signatory on "all" of Dynamic Visions'
accounts.   *Id*. at ¶ 2.   However, Defendants provide no evidence to support any of these
contentions, which are contradicted by evidence presented by Plaintiff, and "self-serving
affidavits alone will not protect the non-moving party from summary judgment."   *Carter*, 180 F.
Supp. 2d at 111; *see also Brooks v. Kerry*, 37 F. Supp. 3d 187, 210 (D.D.C. 2014) (non-movant
"cannot defeat a summary judgment motion on the basis of such self-serving testimony alone.")
(citing cases).   Defendants provide *no evidence* that any of the transfers identified by Plaintiff
were for legitimate expenses.   Defendants provide *no evidence* that any other individual had any
control over Dynamic Visions' accounts.   Defendants provide *no evidence* of any accounts on
which Bongam was not the sole signatory.   Summary judgment for Plaintiff on this issue is
therefore proper.

to DHCF that were worth hundreds of thousands of dollars. *Dynamic Visions, Inc.*, 2016 WL 6208349, at *8-11. As has already been the focus of contempt proceedings in this matter, the evidence also shows that after the Government searched Dynamic Visions' offices as part of the investigation at issue in this case, Defendant Bongam withdrew, or transferred into accounts he controlled personally, large sums of money from Dynamic Visions' bank accounts. Pl.'s Resp. to Defs.' Statement of Facts in Dispute, ECF No. 111-1, at 3-5; ECF No. 90 at 13-15. Even after being ordered by the Court to do so, and being held in contempt of Court, Defendant Bongam refused to provide Plaintiff discovery that would allow it to trace the disposition of these funds, or to effectively litigate its claims against Defendant Bongam individually. If the Court were now to refuse to pierce the corporate veil, Plaintiff may not be able to reach these funds, and Defendant Bongam would be rewarded for his obstruction and stonewalling. The Court will not sanction such an inequitable result. *See Flynn v. Thibodeaux Masonry, Inc.*, 311 F. Supp. 2d 30, 43 (D.D.C. 2004) (piercing corporate veil because "allowing Thibodeaux to escape TMI's incurred liability would undermine 'basic fairness to parties dealing with the corporation'") (quoting *Labadie*, 672 F.2d at 96). Accordingly, the Court will pierce the corporate veil and hold Defendant Bongam liable for the conduct of Dynamic Visions.

## IV. CONCLUSION

For the reasons discussed above, the Court shall now further GRANT Plaintiff's [103] Motion for Summary Judgment. Specifically, the Court now GRANTS Plaintiff's Motion with respect to Plaintiff's claims against Defendant Dynamic Visions relating to forged plans of care. This includes claims associated with Medicaid recipients 9770, 4435 and 1714 that fall within the January 2006 to June 2009 time period. The Court further GRANTS Plaintiff's Motion in that it

will pierce the corporate veil and hold Defendant Bongam individually liable for the conduct of Dynamic Visions.

The Court GRANTS summary judgment only as to liability.  Plaintiff must file a motion for entry of final judgment itemizing, and specifying the basis for, all requests for damages.

    /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
