# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br><br>      v.<br><br>DYNAMIC VISIONS, INC. and ISAIAH<br>BONGAM,<br>   Defendants. |

**Civil Action No. 11-695 (CKK)**

## MEMORANDUM OPINION
(October 20, 2017)

This is a False Claims Act ("FCA") suit brought by Plaintiff United States of America against home health care provider Dynamic Visions, Inc. and its sole owner and president, Isaiah Bongam (collectively "Defendants"). In its Complaint, Plaintiff alleged that between January 2006 and June 2009 Defendants submitted false or fraudulent claims to Medicaid for reimbursement for home health care services. Specifically, Plaintiff claimed that many of the patient files associated with the claims made by the Defendants did not contain "plans of care" as required under applicable regulations, or contained plans of care that were not signed by physicians or other qualified health care workers, did not authorize all of the services that were actually rendered, or contained forged or untimely signatures. On December 6, 2016, the Court granted Plaintiff's Motion for Summary Judgment. Now pending before the Court is Plaintiff's Motion for Entry of Final Judgment and for Award of Damages and Civil Penalties. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS Plaintiff's Motion.

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits: Pl.'s Mot. for Entry of Final Judgment and for Award of Damages and Civil

# I. BACKGROUND

The Court has already set forth the factual background and procedural history of this case in its October 24, 2016 and December 6, 2016 Memorandum Opinions, which are incorporated by reference and made a part of this Memorandum Opinion. *See generally United States v. Dynamic Visions, Inc.*, 216 F. Supp. 3d 1 (D.D.C. 2016); *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16 (D.D.C. 2016). In those Memoranda and associated Orders, the Court held that Defendant Dynamic Visions was liable under the FCA for submitting false Medicaid claims to the D.C. Department of Health Care Finance ("DHCF"). The Court found that Dynamic Visions' claims impliedly certified compliance with D.C. Medicaid regulations that required home health care services be rendered pursuant to signed "plans of care." The Court additionally found that the services for which Defendants had billed DHCF were not, in fact, rendered pursuant to such plans of care. In its December 6, 2016 Memorandum Opinion and Order, the Court also pierced Defendant Dynamic Visions' corporate veil to hold Defendant Bongam individually liable. On January 3, 2017, Defendant Bongam filed a Motion to Set Aside the Court's December 6, 2016 Order, which the Court denied. Now pending and fully briefed is Plaintiff's Motion for Entry of Final Judgment and for Award of Damages and Civil Penalties.

---

Penalties, ECF No. 122 ("Pl.'s Mot."); Pl.'s Suppl. to Mot. for Entry of Final Judgment and for Award of Damages and Civil Penalties, ECF No. 139 ("Pl.'s Suppl."); Def.' Isaiah Bongam's Resp. to Pl.'s Suppl. to Mot. for Entry of Final Judgment and for Award of Damages and Civil Penalties, ECF No. 146 ("Bongam's Opp'n"); Def. Dynamic Visions' Opp'n to Pl.'s Mot. for Entry of Final Judgment, ECF No. 148-1 ("Dynamic Visions' Opp'n"); Pl.'s Omnibus Reply in Support of Mot. for Entry of Final Judgment and for Award of Damages and Civil Penalties, ECF No. 150 ("Pl.'s Reply"). In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

## II. DISCUSSION

The pending motion for final judgment is not an opportunity to re-litigate Defendants' liability. Defendants were given every opportunity to mount a timely defense as to their liability at the appropriate stages. The Court's only task now is to determine the amount of the final judgment to be entered. As explained below, Defendants' latest arguments are either irrelevant to that task or simply meritless.

### A. Plaintiff's Request for Damages

The Court must first determine the amount of damages to which Plaintiff is entitled. The FCA provides that, in addition to civil penalties, any person who violates the statute shall be liable to the government for "3 times the amount of damages which the government sustains because of the act of that person." 31 U.S.C. § 3729(a). Plaintiff has submitted several declarations and exhibits establishing the damages it has sustained. Of primary importance, Plaintiff has submitted the declaration of Federal Bureau of Investigation ("FBI") Special Agent Heidi Turner (nee Heidi Hansberry). *See* Decl. of Heidi Turner, ECF No. 103-4. That declaration explains in detail the nature of the fraudulent claims submitted by Defendants and the resulting amounts of money the government outlaid. Agent Turner explains that the FBI, the Department of Health and Human Services—Office of the Inspector General, and the United States Attorney's Office for the District of Columbia conducted a review of Defendants' records, and that Agent Turner participated in that review. Based on the results of this review, Agent Turner's declaration lists the plans of care that were on file for each patient at issue in this case, the time periods that were not covered by any legitimate plans of care on file, how many invoices were submitted for the patients during the time periods where no legitimate plan of care was on file, and how much the government paid out for those unauthorized invoices. In total, Agent Turner states that the government has paid Defendants

$489,983.90 based on such fraudulent invoices. In a later-filed supplemental declaration, Agent Turner stated that she had discovered minor errors in her calculations and that the actual amount of damages was $489,744.02.[2]

Defendants have previously attacked Agent Turner's declaration on various evidentiary grounds and the Court has already rejected Defendants' arguments. The Court has found, and reiterates now, that the declaration is competent, reliable, non-hearsay evidence from a witness who was personally involved in reviewing Defendant's own business records, all of which were produced to Defendants during discovery. The Court did originally hold Plaintiff's motion for summary judgment in abeyance in part to allow it to provide additional evidence on certain discrete issues discussed in Agent Turner's declaration, but Plaintiff subsequently supplemented the record on those points to the Court's satisfaction. Beyond these evidentiary issues, Defendants have not presented contrary evidence to, or otherwise meaningfully rebutted, Agent Turner's findings and calculations.

Plaintiff has also buttressed Agent Turner's declaration by submitting a declaration from the Director of Health Care Operations Administration of the DHCF, Donald Shearer. *See* Decl. of Donald Shearer, ECF No. 122-1. In his declaration, Mr. Shearer explains the information system DHCF uses to keep track of all of the claims filed with the DHCF by providers and the moneys the DHCF pays out. He states that he provided Agent Turner with DHCF's official reports and records from that system regarding claims paid for Defendants' patients for Agent Turner's review.

---

[2] Defendants argue that these errors, which Agent Turner discovered on her own and have been resolved, show that Plaintiff's evidence is too unreliable to warrant entry of final judgment. The Court disagrees. Contrary to Defendants' argument, there is nothing about the particular errors Agent Turner discovered that suggest any wide-scale problem with her calculations. If anything, the government's forthcoming response to its discovery of minor errors in Agent Turner's calculations indicate the trustworthiness of its evidence.

The Court is satisfied that the evidence submitted by Plaintiff demonstrates that the government sustained $489,744.02 in damages.

Defendants raise various arguments regarding Plaintiff's evidence and calculation of damages, but all are without merit. First, Defendants challenge the time frame used to calculate damages—January 2006 to June 2009.[3] Defendants argue that the time period for damages should not extend all the way to June 2009, but should instead stop after December 2008—the outside date of the DHCF's original administrative review of Defendants' Medicaid claims and after a search and seizure was executed in Defendants' home and offices. This argument is unpersuasive. As an initial matter, Defendants themselves represented in their summary judgment filings that the relevant time period extended to June 2009. *See* Defs.' Stmt. of Material Facts in Dispute, ECF No. 110, ¶¶ 16-17. More importantly, there is simply no reason why the time period of Defendants liability would stop in 2008. The Complaint clearly alleges instances of fraudulent billing by the Defendants beyond that date, extending up to June 2009. Compl., ECF No. 1, ¶ 18. Accordingly, there is nothing improper about calculating damages suffered up to that date.

Second, Defendant Dynamic Visions argues that it cannot effectively challenge the government's evidence of damages without access to the voluminous underlying DHCF payment

---

[3] In a previous Order, the Court noted that the Turner declaration appeared to discuss certain instances of false claims submitted or paid outside of the January 2006 to June 2009 time period alleged in the Complaint. The Court ordered the Plaintiff to supplement the record with a "break[ ] down" of the dates associated with the false claims for which Plaintiff is seeking actual damages to ensure the Court that the requested award of damages was based only on false claims within that time period. The government has done so, by submitting a supplemental declaration from Agent Turner explaining that instances discussed in her original declaration that fell outside of the time period set forth in the Complaint were included only to provide the Court with a "complete picture of the contents of the patient files" and that Agent Turner's actual calculation of damages "remained at all times within the time-frame set forth in the Complaint." *See* Suppl. Decl. of Heidi Turner, ECF No. 139-1. Agent Turner attached to her supplemental declaration a chart that indicates the time frames for the claims considered for each patient at issue, and none fall outside of the January 2006 to June 2009 time frame. ECF No. 139-2.

5

records Agent Turner reviewed and that are summarized in the evidence Plaintiff has filed. This argument is disingenuous. Plaintiff reasonably provided its evidence in summary form pursuant to Federal Rule of Evidence 1006, and expressly stated in its supplemental motion for final judgment that the underlying documents were "available to the Defendants upon request." Pl.'s Suppl. at 3 n.1. The Court will not allow Defendants to willfully refuse to review these documents and then rely on their purported lack of access to them as a reason for the Court to deny Plaintiff's motion.

Finally, Defendants argue that Plaintiff's showing is insufficient because they have not proven "whether the check[ ] numbers for payment provided by Plaintiff [were] in fact cashed," and because Plaintiff has not shown that the payments "in fact relate[ ] to the alleged unsupported and/or unauthorized claims filed by Dynamic." Dynamic Visions' Opp'n at 2. Both arguments fail. Although Plaintiff's evidentiary showing does not speak in terms of whether checks were "cashed," the records provided by Mr. Shearer to Agent Turner for her calculations contained "the amount[s] paid" in response to each of Defendants' claims. The record therefore shows that these amounts were "paid" by the government and accordingly constitute damages. Moreover, the government has in fact demonstrated how the payments made by DHCF relate to Defendants' fraudulent claims. In his declaration, Mr. Idongesit Umo, a paralegal specialist with the United States Attorney's Office, traces how the payment information from DHCF records matches up with the Medicaid recipients identified in Agent Turner's declaration. *See* Decl. of Idongesit Umo, ECF No. 122-2.

In sum, the Court finds that the amount of actual damages sustained by the Plaintiff is $489,744.02. Under section 3729(a), Plaintiff is entitled to an award of three times this amount, or $1,469, 232.06.[4]

**B. Plaintiff's Request for Civil Penalties**

Next, the Court must determine the amount of civil penalties to award Plaintiff in addition to its damages. The FCA states that Defendant "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000" for each false claim submitted, and that "range has subsequently been increased to $5,500 to $11,000." *United States v. Speqtrum, Inc.*, 2016 WL 5349196, *3 (D.D.C. 2016) (citing 64 Fed. Reg. 47099, 47103 (1999)). The Court's inquiry is accordingly twofold. It must first determine how many false "claims" Defendant submitted, and then it must decide the amount of penalty to assess per claim.

---

[4] There is an exception to the trebling of damages under section 3729(a)(2), but that exception is clearly not applicable here. Section 3729(a)(2) states that the Court can instead assess not less than *two* times the amount of damages sustained if the defendant "furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information, fully cooperated with any Government investigation of such violation, and at the time such person furnished the United States with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation." Defendants do not contend that these requirements are satisfied and, given Defendants' well-documented lack of cooperation in this case, it is clear that they are not.

1. **Number of "Claims"**

The FCA defines the term "claim" as "any request or demand, whether under a contract or otherwise, for money or property" that "is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government . . . provides or has provided any portion of the money or property requested or demanded; or . . . will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . ." 31 U.S.C. § 3729(b)(2). "Whether a defendant has made one false claim or many is a fact-bound inquiry that focuses on the specific conduct of the defendant." *United States v. Krizek*, 111 F.3d 934, 939 (D.C. Cir. 1997). "The Courts asks, 'With what act did the defendant submit his demand or request and how many such acts were there?'" *Id.*

Here, the answer is that Defendant Dynamic Visions submitted demands for payment with each computerized invoice filing it submitted for reimbursement. Plaintiff suggested this conclusion despite the fact that each invoice Dynamic Visions submitted contained a number of individual recipient-based invoices which could also theoretically each be considered a "claim." Defendant did not respond to Plaintiff's suggestion that this is a reasonable means of calculating the "claims" at issue, and the Court finds that it is. Defendant made 47 such filings, *see* Pl.'s Ex. 27, ECF No. 122-4, and accordingly submitted 47 false "claims," *see Speqtrum*, Inc., 2016 WL 5349196, *4 (in similar case, finding that each "separate and distinct computerized invoice[ ] for reimbursement of services" constituted a claim for the purposes of calculating civil penalties).

2. **Amount of Civil Penalty Per Claim**

Next, the Court must determine how large of a penalty to assess per each of the 47 claims at issue. The Court has discretion to determine the amount of civil penalty to assess between an

amount of $5,500 and $11,000.  "Though there is no defined set of criteria by which to assess the proper amount of civil penalties against the defendant, the Court finds that an approach considering the totality of the circumstances, including such factors as the seriousness of the misconduct, the scienter of the defendants, and the amount of damages suffered by the United States as a result of the misconduct is the most appropriate." *United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.*, 501 F. Supp. 2d 51, 56 (D.D.C. 2007).

In this case, Plaintiff argues that the totality of the circumstances calls for the maximum penalty to be assessed per false claim because employees of Defendant Dynamic Visions forged signatures of physicians on plans of care and Defendant took money from programs intended to service needy patients.  Plaintiff also argues that the maximum penalty is warranted because using 47 as the amount of claims at issue, despite the fact that each of the 47 invoices submitted by Dynamic Visions contained several false acts, understates the severity of Defendants' actions.

The Court agrees that the maximum penalty is appropriate for the reasons cited by Plaintiff. Defendants' arguments in response are unconvincing.  Both Defendants spend a considerable amount of their briefing challenging the Court's prior conclusion that Dynamic Visions employees forged the signatures of physicians on certain plains of care.  Defendant Dynamic Visions argues that "although the Court entered summary judgment in favor of Plaintiff" on this issue, it erred in

9

doing so because it "failed to consider the evidence before it an draw justifiable inferences in favor of Dynamic Visions." Defs.' Opp'n at 7.[5]

These arguments are not well taken. The Court already determined that there was no genuine dispute of fact with regard to whether Defendant's employees forged signatures on plans of care at the liability stage. The Court notes that it carefully considered this issue at that time. The Court refused to grant summary judgment in Plaintiff's favor on this issue initially and required Plaintiff to file declarations from each physician at issue regarding their signatures. Plaintiff then submitted sworn declarations from each physician, all of whom stated that the signatures on the plans of care were not their own and also not those of anyone authorized to sign on their behalf. In response, Defendants offered only unsubstantiated, self-serving, and conclusory denials. Accordingly, the Court granted summary judgment for Plaintiff. The Court's prior Opinions addressing this issue are incorporated into this Opinion as though set forth in full. *Dynamic Visions*, 216 F. Supp. 3d at 12; *Dynamic Visions*, 220 F. Supp. 3d at 21-22. Defendants have offered no adequate reason for reconsidering that decision now, and the Court declines to do so.

Moreover, even if the Court *were* to revisit the issue in the context of determining the proper amount of civil penalties to assess, Defendants' arguments are simply unpersuasive. They

---

[5] Defendant Bongam goes further and argues that the United States Attorney's Office has engaged in fraud and purposely submitted false information to the Court. Defendant's accusations are completely unfounded and are accordingly rejected by the Court. In response to Defendants' repeated complaint that Plaintiff's evidence is simply false, the Court simply notes that Defendants had numerous opportunities to present rebutting evidence during the discovery process and did not do so. The Court also notes once again that to the extent Defendant Bongam continues to contest Defendant Dynamic Visions' liability, he has no standing to do so. *See* Fed. R. Civ. P. 17(a)(1) ("an action must be prosecuted in the name of the real party in interest.").

are based purely on Defendants' speculation and cherry picked portions of the record, and are rebutted by the actual non-hearsay evidentiary record.

Accordingly, for the reasons cited by Plaintiff, and noting Defendants' lack of cooperation in this matter, the Court will assess an $11,000 penalty per false claim. In sum, the Court will assess a total of $517,000 in civil penalties.

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT Plaintiff's Motion for Entry of Final Judgment and for Award of Damages and Civil Penalties. The Court finds that an evidentiary hearing is not needed and that Plaintiff is entitled to $1,469, 232.06 in damages and $517,000 in civil penalties. In total, Plaintiff will be awarded $1,986,232.06. An appropriate Judgment accompanies this Memorandum Opinion.[6]

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[6] The Court is aware that Plaintiff has requested additional sanctions against Defendants for their failure to comply with discovery orders. The only particular additional sanction Plaintiff has suggested at this time is that the Court incarcerate Defendant Bongam until he provides truthful financial discovery or pays the final judgment issued by the Court. The Court previously indicated that it would revisit the issue of sanctions after it had ruled on Plaintiff's Motion for Entry of Final Judgment, and would give Defendants an opportunity to brief the issue then. Defendants need not brief this issue because the Court will not impose the additional sanction requested at this time. The Court assumes that the Defendants will fully and promptly comply with the judgment of the Court. Plaintiff's request for additional sanctions is accordingly denied without prejudice.