UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br><br>      v.<br><br>DYNAMIC VISIONS, INC. and ISAIAH BONGAM,<br>  Defendants. | Civil Action No. 11-695 (CKK) |

**MEMORANDUM OPINION**
(March 2, 2022)

This is a False Claims Act ("FCA") suit brought by Plaintiff United States of America against home health care provider Dynamic Visions, Inc. and its sole owner and president, Isaiah Bongam (collectively "Defendants"). The United States claimed that many of the patient files associated with claims submitted by Dynamic Visions to Medicaid for reimbursement did not contain "plans of care" as required under applicable regulations, or contained plans of care that were not signed by physicians or other qualified health care workers, did not authorize all of the services that were actually rendered, or contained forged or untimely signatures. The Court previously granted Plaintiff's Motion for Summary Judgment, entered a final judgment against Defendants, and awarded the United States $1,986.232.06 in damages and civil penalties.

The United States Court of Appeals for the District of Columbia Circuit affirmed the Court's grant of summary judgment *except* as to a small subset of claims based on ostensibly forged physician signatures. The Court of Appeals vacated the grant of summary judgment as to those discrete claims and remanded to this Court to recalculate its award of damages and civil penalties.

Now pending before the Court is Plaintiff's [172] Post-Appeal Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities and the record as a whole, the Court **GRANTS** Plaintiff's Motion and shall enter judgment against Defendants and for the United States in the amount of $1,377,995.86.

## I. BACKGROUND

This case has been pending since 2011, when the United States filed suit under the False Claims Act against Dynamic Visions and its sole owner, Isaiah Bongam. *See* Compl., ECF No. 1. The government alleged that, between January 2006 and June 2009, Defendants submitted false or fraudulent claims for reimbursement for home health care services to the D.C. Medicaid Program because the home care services were not authorized by a physician through valid a "Plan of Care" ("POC"). *See generally* Compl. The Court has already set forth the factual background and procedural history of this case in multiple previous opinions, which are incorporated by reference and made a part of this Memorandum Opinion. *See generally United States v. Dynamic Visions, Inc.*, 216 F. Supp. 3d 1 (D.D.C. 2016); *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16 (D.D.C. 2016); *United States v. Dynamic Visions, Inc.*, 282 F. Supp. 3d 257 (D.D.C. 2017).

In its previous Memoranda and associated Orders, the Court held that Defendant Dynamic Visions was liable under the FCA for submitting false Medicaid claims to the D.C. Department of Health Care Finance ("DHCF"). The Court found that Dynamic Visions' claims impliedly certified compliance with D.C. Medicaid regulations that required home health care services be rendered

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits:
- Plaintiff's Post-Appeal Motion for Summary Judgment ("Pl.'s Mot."), ECF No 172;
- Defendant Dynamic Visions Inc.'s Opposition to Plaintiff's Post-Appeal Motion for Summary Judgment ("Dynamic Visions' Opp'n"), ECF No. 175;
- Reply in Support of Plaintiff's Post-Appeal Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 176; and
- Defendant Bongam's Opposition to Plaintiff's Post-Appeal Motion for Summary Judgment ("Bongam's Opp'n"), ECF No. 178.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

pursuant to signed POCs. The Court additionally found that the services for which Defendants had billed DHCF were not, in fact, rendered pursuant to such POCs. The Court also pierced Defendant Dynamic Visions' corporate veil to hold Defendant Bongam individually liable. The Court entered judgment in favor of the United States and awarded $1,986,232.06 in damages and civil penalties.

Defendants appealed the judgment to the United States Court of Appeals for the District of Columbia Circuit. The Court of Appeals "affirm[ed] the district court's grant of judgment for False Claims Act violations in large part," but "vacate[d] as to those claims for which the alleged falsity rests on Dynamic Visions's ostensible forgery of physician signatures." *United States v. Dynamic Visions*, 971 F.3d 330, 336 (D.C. Cir. 2020). The Court of Appeals explained that it vacated the Court's summary judgment grant *only* with respect to the "limited subset of claims as to which the alleged falsity rested solely on the purported forgery of the physician signatures on POCs," concluding that the United States failed to "show the absence of any genuine dispute of material fact that Dynamic Visions forged the signatures." *Id.* at 338.

Because the Court of Appeals vacated the grant of summary judgment as to claims based on forged POCs, it also vacated the Court's damages award (which included amounts attributable to forged POCs). *Id.* at 340. Furthermore, the Court of Appeals noted that the United States had inadvertently failed to reduce its request for damages to account for the fact that the federal government receives only a 70% share of reimbursements from the D.C. Medicaid program. *Id.* at 340. Finally, the Court of Appeals observed that this Court had awarded the maximum amount of civil penalties based, in part, on Dynamic Visions' conduct of forging signatures. *Id.* at 339–40. Without "express[ing] [any] view on whether maximum civil penalties would be appropriate without the forgery related claims," the Court of Appeals vacated this Court's

assessment of civil penalties. The Court of Appeals remanded the case to this Court for further proceedings.

On remand, the parties first attempted to negotiate a resolution of this case through mediation. *See* ECF Nos. 162–170. After those efforts proved unsuccessful, Plaintiff filed its [172] Post-Appeal Motion for Summary Judgment on July 29, 2021. Defendant Dynamic Visions filed its opposition on October 22, 2021, and the United States filed its reply on November 5, 2021. On December 6, 2021, the Court issued an order indicating that it had received what appeared to be a request for extension by Mr. Bongam to file his opposition to Plaintiff's Motion. Order, ECF No. 177. Although Mr. Bongam had not properly filed his pleading, the Court granted him leave to file an opposition and allowed the United States until January 10, 2022 to file a reply. Mr. Bongam filed his opposition on December 6, 2021. The United States did not file a separate reply to Mr. Bongam's opposition.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.* Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.

*See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby,* 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

The Court of Appeals vacated this Court's award of damages and civil penalties and remanded for further proceedings to (1) subtract from the damages award losses associated with forged POCs; (2) to reduce the damages total by thirty percent to correspond to the federal share of D.C. Medicaid reimbursements; and (3) to consider the appropriate amount of civil penalties in light of its decision vacating the Court's grant of summary judgment as to claims based on forged POCs. The United States has moved for summary judgment as to the recalculation of damages and civil penalties.

**A. Damages**

In its previous assessment of damages, the Court relied on the Declaration of Federal Bureau of Investigation ("FBI") Special Agent Heidi Turner (née Heidi Hansberry), which "list[ed] the plans of care that were on file for each patient at issue in this case, the time periods that were not covered by any legitimate plans of care on file, how many invoices were submitted for the patients during the time periods where no legitimate plan of care was on file, and how much the government paid out for those unauthorized invoices[.]" *Dynamic Visions, Inc.*, 282 F. Supp. 3d at 259–61. Although Defendants "attacked [Special] Agent Turner's declaration on various evidentiary grounds," this Court concluded that the declaration constituted "competent, reliable, non-hearsay evidence from a witness who was personally involved in reviewing Defendant's own business records, all of which was produced to Defendants during discovery." *Id.* at 260. Based on Special Agent Turner's declaration, other supporting evidence,[2] and the lack of any contrary evidence offered by Defendants, the Court concluded that the United States demonstrated that it had sustained $489,744.02 in damages. *Dynamic Visions, Inc.*, 282 F. Supp. 3d at 259–61. The Court then trebled that amount in accordance with the FCA, resulting in a damages award of $1,469,232.06. *Id.* 31 U.S.C. § 3729(a) (providing that, in addition to civil penalties, any person who violates the statute shall be liable to the government for "3 times the amount of damages which the government sustains because of the act of that person").

Although the Court of Appeals agreed that the Court had properly rejected Defendants' challenges to the United States' evidence on damages, it disagreed that the United States was

---

[2] For example, the Court relied on a declaration submitted by Director of Health Care Operations Administration of the DHCF, Donald Shearer. *See* Decl. of Donald Shearer, ECF No. 122–1. "In his declaration, Mr. Shearer explains the information system DHCF uses to keep track of all of the claims filed with the DHCF by providers and the moneys the DHCF pays out. He states that he provided Special Agent Turner with DHCF's official reports and records from that system regarding claims paid for Defendants' patients for Agent Turner's review[.]" *Dynamic Visions, Inc.*, 282 F. Supp. 3d at 260.

entitled to summary judgment as to claims based on forged POCs. *Dynamic Visions*, 971 F.3d at 338, 340. Accordingly, consistent with the Court of Appeals' opinion, the Court now assesses the appropriate award of damages *excluding* claims based on forged POCs.

The Court must first consider which claims were based on POCs containing purportedly forged signatures. There is no dispute that charges associated with Medicaid Recipients 9770 and 4435 fall within this category, and therefore should be excluded from the recalculation of damages. *See* Plaintiff's Statement of Material Facts Not in Genuine Dispute ("Pl.'s Stmt.") ¶¶ 15, 17, 18, ECF No. 172-1; Dynamic Visions' Stmt. of Material Facts in Dispute ("Dynamic Visions' Stmt."), ¶ 15.[3] Nor is there any dispute that charges for those two recipients amounted to $216.32 and $18,712,20, respectively. Pl.'s Stmt. ¶¶ 15, 17, 18; Dynamic Visions' Stmt. ¶¶ 17, 18.

The remaining dispute pertains to which invoices associated with Medicaid Recipient 1714 were based on forged POCs, and therefore should be excluded from the recalculation of damages. There is no dispute that the total amount of improper charges associated with Medicaid Recipient 1714 is $53,798.34—that figure includes charges based on *both* forged POC and no POC at all. The only dispute between the parties is which portion of charges associated with Recipient 1714 is attributable to *forged* POCs as opposed to *no* POC.

The United States contends that of $53,798.34 in charges associated with Recipient 1714, $24,409.44 occurred during "the time period of August 26, 2008 through March 19, 2009, during which Dynamic Visions had no POC at all in the recipient's file." Pl.'s Reply at 3. In other words, that amount was *unrelated* to any forged POCs, and therefore should not be excluded from the

---

[3] Dynamic Visions did not comply with the Court's [171] Scheduling and Procedures Order, which directs "[a] party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied[.]" Order at 1, ECF No. 171. However, the Court has generously considered Dynamic Visions' entire pleading to discern whether or not it disputes certain facts proffered by Plaintiff.

Court's recalculation of damages. The balance of $29,388.90 encompasses invoices submitted during the period July 25, 2007 through February 24, 2008—which *did* rely on forged physician signatures. Pl.'s Mot. at 6. The United States argues, therefore, that $29,388.90 of charges associated with Medicaid Recipient 1714 should be excluded from the damages recalculation in accordance with the Court of Appeals' opinion.

The Declaration of Special Agent Turner supports these figures. She attests that, as to Medicaid Recipient 1714, "all claims from July 25, 2007, through February 24, 2008, are deemed to be unauthorized because the physician's signature was forged this time period . . . A review of paid claims reflects that Dynamic Visions submitted 232 invoices . . . and was paid $29,388.90 for claims not authorized by the physician during this period." Turner Decl. ¶ 22, ECF No. 158-4. However, as to this same recipient, "all claims from August 26, 2008, through March 19, 2009, are deemed unauthorized because Dynamic Visions did not have a valid CMS-485 for the covered period. A review of paid claims reflects that from [the same period], Dynamic Visions submitted 197 invoices . . . and was paid $24,409.44 for unauthorized claims." *Id.* ¶ 23.

Neither Defendant offers evidence to rebut Special Agent Turner's Declaration. Dynamic Visions argues only that the record before the Court is insufficient to determine which invoices are attributable to which forged POCs. *See, e.g.*, Dynamic Visions' Opp'n at 7. The Court disagrees, finding that Special Agent Turner's affidavit plainly delineates the amount of claims associated with POCs that were purportedly forged. Defendant Bongam merely contends that the United States "has always claimed that they paid invoices to me and I will say that is not true." Bongam's Opp'n at 3. He also again argues that Special Agent Turner's declaration is "hearsay"— a challenge both this Court and the Court of Appeals flatly rejected. In sum, both Defendants endeavor to resuscitate challenges to the sufficiency of the Government's evidence on damages

previously rejected by this Court and by the Court of Appeals. But neither Defendant controverts the evidence presented by the United States pertaining to the amount of damages that should be subtracted from the Court's previous assessment because those payments were associated with forged POCs.

Accordingly, the Court concludes that the total amount of damages associated with the forged POC claims is $48,317.42, which includes: (1) $216.32 associated with Medicaid Recipient 9770; (2) $18,712,20 associated with Medicaid Recipient 4435; and (3) $29,388.90 associated with Medicaid Recipient 1714. Subtracting that amount from the from the total amount of damages previously awarded by the Court ($489,744.02) results in a new damages amount of $441,426.60. This new total excludes amounts attributable to forged POCs.

In accordance with the Court of Appeal's directive, the Court must further reduce this amount to account for the fact that the federal government's contribution to the District of Columbia's Medicaid program is 70%. *Id.* at 340. Removing the 30% of the District's share of the D.C. Medicaid program then reduces the damages amount by 30% to $308,998.62.

Under the FCA's treble-damages directive, the Court finds that the appropriate award of damages consistent with the Court of Appeals' opinion is **$926,995.86**

### B. Civil Penalties

The Court turns next to its consideration of civil penalties. Under the FCA, a defendant "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000" for each false claim submitted, and that "range has subsequently been increased to $5,500 to $11,000." *United States v. Speqtrum, Inc.*, 2016 WL 5349196, *3 (D.D.C. 2016) (citing 64 Fed. Reg. 47099, 47103 (1999)). The Court's inquiry is accordingly twofold. It must first

9

determine how many false "claims" Defendant submitted, and then it must decide the amount of penalty to assess per claim.

In its earlier Memorandum Opinion, the Court found that Dynamic Visions had submitted 47 false "claims" for reimbursement. *Dynamic Visions*, 282 F. Supp. 3d at 262. These 47 "claims" account for each time that Dynamic Visions submitted "demands for payment with each computerized filing it submitted for reimbursement." *Id.* This characterization of "claims" (which was proposed by the government) was already generous to Defendants, as "each invoice Dynamic Visions submitted contained a number of individual recipient-based invoices, which could also theoretically be considered a 'claim.'" *Id.* The Court further concluded that the maximum civil penalty for each claim was appropriate, citing (among other reasons) the egregious conduct of forging physicians' signatures. *See id.* at 262–63. Because the Court of Appeals vacated the Court's grant of summary judgment as to claims based on forged POCs, it also vacated the Court's assessment of civil penalties without "express[ing] [any] view on whether maximum civil penalties would be appropriate without the forgery-related claims." *Dynamic Visions*, 971 F.3d at 340.

On remand, the United States indicates that 6 of the 47 invoices contain charges "solely related to the forged signatures." Pl.'s Reply at 5–6. Those include Invoices 303857, 330103, 334160, 335474, 340622, and 343196. Pl.'s Mot. at 8. According to the government, the other invoices submitted by Dynamic Visions associated with Medicaid Recipients 1414, 9770, and 4435 also "contain false charges for other Medicaid Recipients, unrelated to the forged POCs and upheld by the Circuit Court." Pl.'s Mot. at 8–9. There are 25 additional invoices which include charges associated with those three Medicaid Recipients—but those additional invoices *also* contain other false charges based on an unsigned, late-signed, or missing POCs. Pl.'s Mot. Ex. 27,

10

ECF No. 172-2.  Accordingly, the Court agrees with the government that exclusion of those "claims" is not warranted.

Again, neither Defendant offers any controverting evidence.  As in prior proceedings, Dynamic Visions merely asserts that the record is "insufficient" and seeks to evade responsibility for its fraudulent conduct, contending that the "remaining basis for the unauthorized claims are not directly attributable to Defendants but are based on actions beyond their control[.]"  Dynamic Visions' Opp'n at 9.  The Court remains unpersuaded by this argument.

As to the remaining 41 claims (which excludes claims based solely on forged POCs), the Court has discretion to determine the amount of civil penalty to assess an amount between $5,500 and $11,000. "Though there is no defined set of criteria by which to assess the proper amount of civil penalties against the defendant, the Court finds that an approach considering the totality of the circumstances, including such factors as the seriousness of the misconduct, the scienter of the defendants, and the amount of damages suffered by the United States as a result of the misconduct is the most appropriate." *United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.*, 501 F.Supp.2d 51, 56 (D.D.C. 2007).  The Court previously indicated that the maximum penalty per claim was warranted because "Defendant took money from programs intended to service needy patients" and because the number of claims "understate[d] the severity of Defendant's action" because each invoice "contain[ed] several false acts." *Dynamic Visions*, 282 F. Supp. 3d at 262–63.  These reasons still support the maximum allowable civil penalty.

Accordingly, the Court shall assess an $11,000 penalty per false claim.  In sum, the Court will assess civil penalties in the total amount of **$451,000**.

## III.  CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiff's Post-Appeal Motion for Summary Judgment.  The Court finds that an evidentiary hearing is not needed and that Plaintiff is entitled to $926,995.86 in damages and $451,000 in civil penalties.  In total, Plaintiff will be awarded $1,377,995.86.  An appropriate Judgment accompanies this Memorandum Opinion.

                                               /s/
                                  COLLEEN KOLLAR-KOTELLY
                                  United States District Judge

Date: March 2, 2022